**Eurene GARDNER**

v.

**Elliot L. RICHARDSON.**

**Civ. A. No. 71–103.**

United States District Court,
E. D. Pennsylvania.

Sept. 26, 1974.

Robert Land, Philadelphia, Pa., for plaintiff.

John T. Thorn, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

Plaintiff seeks judicial review of a final decision of the Secretary of Health, Education and Welfare pursuant to Sec-

tion 205(g) of the Social Security Act, 42 U.S.C. § 405(g). This case had been previously remanded to the Secretary to consider crucial evidence. After a second hearing, the Secretary nevertheless reaffirmed his decision that plaintiff is not entitled to disability benefits. Before me are cross-motions for summary judgment.

The claimant, Eurene Gardner, is fifty-four years old. In January, 1959, she and her husband were found unconscious after being overcome by coal gas. Mrs. Gardner spent two and one-half months recovering at Temple University Hospital. Her stay was prolonged by the development of a deep, weeping lesion on her right thigh which eventually responded to medication. The probable cause of the lesion was a burn received during the January accident. Mrs. Gardner was ultimately discharged on April 20, 1959, with a final diagnosis of:

Acute brain syndrome secondary to intoxication (probably carbon monoxide poisoning).

Pressure sore of the right thigh with secondary infection.

Thrombophlebitis.

Urinary tract infection.

Afterwards, plaintiff continued to be treated by Dr. Seymour Guyer, a general practitioner, for pain in her right leg and foot. Beginning in June 1969 and continuing for four months Mrs. Gardner was also treated by Dr. Gerald V. Feldman, a chiropractor. Finally, in August 1969, the plaintiff became an outpatient at Hahnemann Hospital. She was subsequently admitted to Hahnemann twice in 1970 for surgery on her right foot.

The claimant was examined by Dr. Joseph H. Auday on October 23, 1972. He concluded that Mrs. Gardner showed a marked functional impairment of the lower right leg and would therefore be unable to perform any work involving walking or travelling.

Mrs. Gardner has a tenth grade education. Prior to 1959 she had been employed as a domestic and as a tomato inspector. Following her hospitalization, she was employed at a shut-in society from 1961 to 1964. She stopped working, however, when the pain in her leg and back precluded even this type of activity. Nevertheless, plaintiff felt well enough after the 1970 operations to attempt a return to work and obtained employment in a Philadelphia hotel. Despite taking pain killers she was unable to complete her assigned work and was eventually discharged.

Plaintiff applied to the Secretary for disability benefits pursuant to 42 U.S.C. §§ 416(i), 423. After a hearing, the administrative law judge concluded she was not entitled to disability benefits. This decision was affirmed by the Appeals Council. Subsequently this action was begun. On July 18, 1972, I remanded it to the Social Security Administration to consider additional evidence. Although a supplemental hearing was held, the administrative law judge nevertheless reaffirmed the previous finding that the plaintiff was not entitled to disability benefits. His decision was adopted by the Appeals Council, which stands as the final decision of the Secretary. Thereafter, the motions before this Court were filed.

Plaintiff contends that as a result of the January, 1959, accident she was permanently, totally, and continuously disabled within the meaning of the Social Security Act.[1] She states that she was unable to engage in gainful employment from the time she was released from Temple Hospital in April 1959, until within fourteen months of the filing of her application for benefits. Mrs. Gardner argues that the Secretary's decision

1. 42 U.S.C. § 416(i)(1) defines disability as: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or *has lasted* or can be expected to last for a continuous period of not less than 12 months . . . . Furthermore, there must be a factual determination that the impairment renders plaintiff unable to engage in any substantial gainful employment.

was not based upon substantial evidence. In fact, she claims that all of the evidence presented at both hearings leads inescapably to the conclusion that as a result of the January, 1959, accident she was disabled as a result of a deformed and partially paralyzed right leg.

The Secretary found, however, that plaintiff was not so physically impaired as to prevent her from engaging in any substantial employment before September 30, 1959, when her insured status expired. The Secretary, after weighing the testimony and exhibits, decided that Mrs. Gardner had not presented sufficient credible evidence to sustain her burden of proof. Furthermore, the Secretary adopted the statement of a vocational witness that if plaintiff had only a slight impairment in her right leg there were various jobs available locally for which plaintiff would be qualified.

There is no question that at the present time Mrs. Gardner suffers from a permanent physical impairment that would qualify her for disability benefits. She has an orthopedic impairment of her right leg and foot, exacerbated by degenerative arthritis, resulting in a partially paralyzed right leg. However, the question to be decided by the Secretary was whether plaintiff was sufficiently and continuously impaired so as not to be able to engage in any substantial gainful activity on or before September 30, 1959, the expiration of her insured status. See Pettyjohn v. Richardson, Civ. No. 69–2256 (E.D.Pa., filed July 15, 1971).

■■ The sole issue before this Court is whether the Secretary's decision is supported by substantial evidence and should be sustained.[2] To do this I must review the record as a whole but cannot try the case de novo. Toborowski v. Finch, 363 F.Supp. 717, 718–719 (E.D.Pa.1973); Powell v. Richardson, 355 F.Supp. 359, 361 (E.D.Pa.1973).

■■ In this type of Social Security disability case the burden is solely upon the claimant to prove the existence of a disability. 42 U.S.C. § 423(d)(5);[3] Gold v. Secretary of Health, Education and Welfare, 463 F.2d 38, 41 (2d Cir. 1972); Valenti v. Secretary of Health, Education and Welfare, 350 F.Supp. 1027, 1028 (E.D.Pa.1972). There are four factors which the Secretary must consider in determining whether a claimant is disabled within the meaning of the Social Security Act. They are: (1) objective medical and clinical facts; (2) diagnoses or medical opinion based on these facts; (3) subjective evidence of pain and disability; and (4) claimant's age, educational background, and work history. DePaepe v. Richardson, 464 F.2d 92, 94 (5th Cir. 1972); Toborowski v. Finch, supra; Valenti, supra.

■ It is firmly established that the mere presence of a disease or impairment does not automatically result in a disability as defined in the Act. Hunter v. Secretary of Health, Education and Welfare, 329 F.Supp. 43, 46 (E.D.Pa. 1971). A claimant must present evidence that his impairment renders him unable to engage in substantial employment.[4]

The problem with plaintiff's case is that she presents a dearth of evidence to show that she was disabled within the

---

2. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

3. 42 U.S.C. § 423(d)(5). "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

4. 42 U.S.C. § 423(d)(2)(A) provides:

[a]n individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .

meaning of the Act during her period of insured eligibility. The clinical data from Mrs. Gardner's extended stay at Temple University Hospital does record extensive treatment for an infection of a pressure sore of the right thigh. The discharge sheet, however, does not reveal any permanent impairment. It simply suggests follow-up care by the outpatient clinic or family doctor.

The evidence presented by Mrs. Gardner's family doctor, Dr. Guyer, is in the form of diagnoses and medical opinion that are in some ways contradictory. It is not clear from Dr. Guyer's statements exactly when he began treating the plaintiff. Plaintiff's testimony, however, supports his affidavit that he started seeing her a month or two after she left Temple University Hospital. Moreover, while Dr. Guyer does state that plaintiff had developed paralysis in her right leg, it is unclear whether this impairment was fully disabling on or before September 30, 1959.

When this matter was previously before me, I believed the medical evidence to be sketchy and incomplete. In addition, I concluded the administrative law judge had not adequately considered Mrs. Gardner's subjective testimony as to her symptomology and pain. It was for these reasons that the matter was remanded to the Secretary for his reconsideration after the development of a better evidentiary record. Unfortunately, in all of the additional record that was produced, there is nothing except some further testimony by plaintiff to support her disability claim before her eligibility ran out.

The Secretary, after reviewing all of the evidence, once again rejected plaintiff's claim contending that she did not meet her burden of proof. In analyzing Dr. Guyer's testimony the Secretary did not feel there was enough specific medical evidence to support the claim that the plaintiff suffered sufficient physical impairment to be disabled on or before September 30, 1959. Also, in considering the plaintiff's own testimony, the Secretary was not convinced that she suffered from "such intense and unrelenting pain that she was unable to engage in any substantial gainful activity" during her period of eligibility.

The Secretary is required to make his determination from all the evidence. While objective evidence is given great weight, medical reports and diagnoses at times are sufficient to establish the existence of a disability. Longo v. Weinberger, 369 F.Supp. 250, 255 (E.D. Pa.1974). Even unsupported evidence of subjective pain that is of sufficient severity may be enough to support a finding of disability. Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971); Farmer v. Weinberger, 368 F.Supp. 1, 5 (E.D.Pa.1973); Pope v. Richardson, Civ. No. 72-1460 (E.D.Pa., filed May 29, 1973). But, because a person has some pain or discomfort it does not automatically make him disabled. Timmerman v. Weinberger, 375 F.Supp. 641, 645 (E.D. Mo.1974). It is the duty of the Secretary to weigh the evidence and give greater weight to that portion of the evidence he finds persuasive. Rivas v. Weinberger, 475 F.2d 255, 258 (5th Cir. 1973); Lawhorn v. Weinberger, 365 F. Supp. 491, 494 (W.D.Va.1973).

Most particularly, the administrative law judge to whom the Secretary delegated fact finding responsibilities, must decide issues of credibility and the appropriate weight to be given the exhibits. Great deference should be given his judgment since he heard the witnesses' testimony and observed their demeanor. Longo v. Weinberger, supra, 369 F.Supp. at 257; Urgolites v. Finch, 316 F.Supp. 1168, 1173 (W.D.Pa.1970). Furthermore, he should reject such testimony, especially pertaining to subjective pain, if he does not find it credible. Farmer v. Weinberger, supra; Pope v. Richardson, supra.

This court is ever mindful of the beneficent purpose of the Social Se-

curity Act and the more tolerant standard to be applied in these administrative proceedings. Hess v. Secretary of Health, Education and Welfare, 497 F.2d 837, 840 (3d Cir. 1974). This is especially true in the case of persons with less than an average educational and income level who do not seek the extensive medical care considered necessary by more affluent citizens.

 To be eligible for disability benefits, however, a claimant must meet certain minimal requirements. Foremost among these is that she must adequately prove the existence of a disability within the claimant's period of insured eligibility. The commencement of the disability, after the ending of such eligibility, even if the impairment had its genesis during some eligible time, does not entitle the claimant to disability benefits. Jeralds v. Richardson, 445 F.2d 36, 39 (7th Cir. 1971); Domozik v. Cohen, 413 F.2d 5, 6 n. 3 (3d Cir. 1969). If Mrs. Gardner cannot establish that the impairment to her leg was such that she was disabled within the meaning of the law while she was eligible, she has not met her burden of proof and her claim must fail.

A similar case is Kirkland v. Weinberger, 480 F.2d 46 (5th Cir.), cert. denied, 414 U.S. 913, 94 S.Ct. 255, 38 L. Ed.2d 155 (1973), where the court held that while plaintiff did prove that she was presently disabled, she did not offer sufficient evidence to prove she was disabled at any time she was eligible for disability benefits.

 In this case, if I had been required to make the original determination, I might well have reached a different result. But having reviewed the evidence, I cannot conclude the Secretary's decision that plaintiff failed to prove the existence of a disability during her period of eligibility was arbitrary, capricious, or an abuse of discretion. See DeNafo v. Finch, 436 F.2d 737, 739–740 (3d Cir. 1971). Therefore, I must affirm the denial of benefits to the plaintiff.