**Patricia G. WARHOLA**

v.

**Patricia Roberts HARRIS,[1] Secretary of Health and Human Services.**

**Civ. A. No. 80–4094.**

United States District Court, E. D. Pennsylvania.

March 23, 1981.

---

1. Richard S. Schweiker succeeded Patricia Roberts Harris as Secretary of Health and Human Services on January 21, 1981 and, therefore, may properly be substituted as defendant in this suit.

Lester Krasno and Maureen E. Krueger, Pottsville, Pa., for plaintiff.

Joan K. Garner, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is an action brought under Section 205(g) of the Social Security Act (Act), 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare (Secretary) denying plaintiff's application for disability benefits.

Plaintiff is 50 years old (Tr. 57). She has a tenth grade education (Tr. 68) and work experience as a sewing machine operator (Tr. 68). She alleges that she became unable to work in 1974 due to arthritis (Tr. 57).

Plaintiff filed an application for a period of disability and disability insurance benefits on November 1, 1979 (Tr. 57–60). The application was denied initially and on reconsideration by the Division of Disability Operators of the Social Security Administration, after the Pennsylvania State Agency, upon evaluation of the claim by a physician and a disability examiner, had found that plaintiff was not under a disability within the meaning of the Act (Tr. 62, 86–88). The case was considered *de novo* by an Administrative Law Judge (ALJ) before whom plaintiff and her attorney appeared. In a decision dated June 23, 1980, the ALJ determined that plaintiff's impairments did not have their onset before June 30, 1978 (Tr. 20–21). Therefore, the ALJ concluded that plaintiff was not under a disability prior to the expiration of her special insured status on June 30, 1978 (Tr. 9–21). The Appeals Council affirmed that decision on August 27, 1980, thereby making it the final decision of the Secretary (Tr. 3).

The issue before the Court is whether the Secretary's final decision denying plaintiff's claim for disability benefits is supported by substantial evidence.

The Social Security Act limits judicial review of the Secretary's final decision. 42 U.S.C. § 405(g). If the Secretary's decision is supported by substantial evidence it must be affirmed by the Court. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is evidence which a reasoning mind would accept as sufficient to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Under the Act, plaintiff has the burden of establishing disability as defined by the Act. 42 U.S.C. § 423(d)(5); *Hess v. Secretary of Health, Education and Welfare*, 497 F.2d 837 (3d Cir. 1974). Moreover, the plaintiff must establish the existence of a disability within the period of insured eligibility. 42 U.S.C. § 423(a)(1)(A).

██ In determining whether the plaintiff is able to engage in substantial gainful activity, there are four elements of proof to be considered: (1) medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) the plaintiff's age, education, and work history. *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972).

██ In addition to the burden of proving a disability medical impairment, the plaintiff has the burden of establishing the existence of a disability prior to the expiration of her insured status. 42 U.S.C. § 423(a)(1)(A); *Domozik v. Cohen*, 413 F.2d 5, 6 (3d Cir. 1969). The commencement of a disability after the expiration of the period of insured eligibility, even if the impairment had its genesis during some eligible time, does not entitle the plaintiff to disability benefits. *Domozik v. Cohen, supra*, at 6 n. 3; *see also Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973), *cert. denied*, 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971); *Gardner v. Richardson*, 383 F.Supp. 1, 6 (E.D.Pa.1974). In this case the relevant period of time is from 1974, the date of alleged onset of disability, to June 30, 1978, the date when the plaintiff last met the special earnings requirement.

██ Thus, June 30, 1978, becomes a crucial date and the precise question involved before this Court is whether the plaintiff's physical impairments, including arthritis, coronary insufficiency, peptic ulcer disease and disc syndrome, admittedly disabling, had their origin prior to June 30, 1978, the expiration date of plaintiff's special insured status and, more specifically, whether there is substantial evidence to support the findings and conclusions of the ALJ that such conditions were not disabling prior to the crucial date, June 30, 1978.

Importantly, the uncontradicted medical evidence of record, particularly the reports of Dr. Tavaria, establish that he treated the plaintiff subsequent to her last day of work in 1974 and, more particularly, in November 1976, and prior to June 30, 1978, and based upon his findings at that time, combined with his findings on examination and treatment subsequent to June 30, 1978, was of the opinion that the plaintiff was unable to engage in any substantial gainful activity on and prior to June 30, 1978 (Tr. 122, 123, 125, 127).[2]

The ALJ, in his "evaluation of the evidence", rejected Dr. Tavaria's opinion and conclusion properly asserting that pursuant to Section 404.1526 of Regulations # 4 "a statement by a physician that an individual is disabled shall not be determinative of the

**2.** Additional medical evidence which would otherwise have been available to the plaintiff as to her condition prior to June of 1978 was rendered unavailable by reason of the death of another attending physician, Dr. Purcell approximately two years prior to the hearing (Tr. 54).

question as to whether or not an individual has a disability. The weight to be given such physician's statement depends upon the extent to which it is supported by specific and complete clinical findings" (Tr. 19). He then concludes that because the record is barren of hospitalization and diagnostic testing prior to the expiration of the insured status on June 30, 1978, that accordingly the medical findings and opinion of Dr. Tavaria should be disregarded. We disagree.

The testimony of the plaintiff establishes that as early as 1974 and continuing through June 30, 1978 and thereafter, she was unemployed due to her physical symptoms and conditions. The ALJ suggests that because she may have been "bicycling on weekends" until approximately two years prior to the hearing, because she performed certain "household chores which required most of the day to complete", that this did not constitute the "behavior of an individual with the symptomology of which plaintiff testified" (Tr. 19). Conceding as he did that the plaintiff "is presently disabled due to her multiple problems" (Tr. 20), he concluded that the evidence did not support her allegation of disability on or before June 30, 1978, and, therefore, denied benefits. Here again we are forced to disagree. The ALJ has overlooked or otherwise ignored the multiple symptoms manifested and testified to by the plaintiff as they existed prior to June 30, 1978. In alluding to the performance of limited household chores which took her the entire day to perform, he ignores her testimony that this included simple tasks of making the beds and washing the dishes, whereas the cleaning and heavy work were done by her daughter and son-in-law. Additionally, in his consideration of the entire record reference is made to the plaintiff's visitation of her children from time to time who lived two to four blocks distant. These types of activity—visitation of children within two to four blocks distant, bicycling occasionally on a week-end, making of beds, washing of dishes and performance of household chores taking the entire day which might well have been completed within hours by a nor-

mal housewife and mother—do not refute the uncontradicted medical evidence of record. Neither has the ALJ given adequate consideration to the plaintiff's complaints of constant pain and other symptoms for which she received multiple medications covering multiple symptoms (Tr. 38–43).

As was stated by the Circuit Court of Appeals in *Smith v. Califano*, 637 F.2d 968 (3d Cir. 1981)

The ALJ has decided every major issue of credibility against the claimant. Yet, when carefully reviewing the actual facts of record on which the ALJ presumably based his findings, it seems that the evidence in support of his adverse ruling is so slight that, upon consideration of the entire record, one must wonder whether his findings, particularly his credibility findings, were based on a mere speculative hunch or were reasoned findings . . . (at 969)

The Court there concluded:

We do not find a sufficient basis of record for the ALJ to make his adverse findings on credibility, and therefore this case must be resolved in favor of the plaintiff. (at 969)

Supporting its conclusion, the Court there stated:

An administrative decision to deny benefits will be upheld on review if supported by "substantial evidence". 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 [91 S.Ct. 1420, 28 L.Ed.2d 842] (1971). Despite the deference to administrative decisions implied by this standard, appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence. *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974), *cert. den.* 420 U.S. 931 [95 S.Ct. 1133, 43 L.Ed.2d 403] (1975); *Williams v. Finch*, 440 F.2d 613 (5th Cir. 1971); *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964). (at 970)

Here, as there, we find that the Secretary failed to give appropriate consideration to unrebutted medical evidence and failed to give appropriate consideration to plaintiff's testimony of severe pain and other symptomology (see page 970 of Circuit Court's opinion). Here, as there, we conclude that the ALJ drew an "impermissible inference of no disability". (at 970). Here, as there, the Secretary presented no evidence rebutting the report of the plaintiff's physician (at 971). Here, as there, the Secretary's position is unsupported by medical testimony, whereas the medical evidence produced by the plaintiff stands "unrebutted" (at 971). Here, as there, "the ALJ's conclusions that plaintiff did not have a statutory disability is, as a matter of law, just too speculative to be sustainable". (at 971)

Continuing with obvious parallels,

". . . statutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity... (at 971)

Certainly the limited household duties performed by the plaintiff, limited shopping activities and visitation with children living close by, "sporadic" bicycling and once a month visitations with a "mothers' club" rise no higher than the activities described in the *Smith* case. "Sporadic and transitory activities" do not disprove disability. (at 972)

Importantly, the court in the *Smith* case concluded:

The ALJ's error in drawing an inference from sporadic activities to a lack of disabling pain is compounded by the absence of corroborating medical testimony. Such evidence is essential to a finding of non-disability. *Williams v. Finch, supra; Willem v. Richardson* [8 Cir., 490 F.2d 1247] *supra, Garrett v. Richardson*, 471 F.2d 598 (8th Cir. 1972).

Here, all evidence as to disabling pain is favorable to the plaintiff. An ALJ may not make purely speculative inferences from medical reports... Because the evidentiary basis for his decision was not what he believed it to be, the ALJ's rejection of plaintiff's assertions of disabling pain was unsound.

(at 972)

We are reluctant to reverse the Secretary and entertain an understandable inclination to remand the record for further consideration. However, given the death of Dr. Purcell who might have testified in more detail as to the plaintiff's condition prior to June 1978, the record, on remand, could only be supplemented by the live testimony of Dr. Tavaria as opposed to his written medical reports and opinions now contained in the record. It is undisputed that he did see and treat the plaintiff prior to June 30, 1978, and thus his live testimony, it would appear, could add nothing to the written medical evidence already supplied by him and already of record. Thus we are driven to the conclusion expressed by the majority in the footnote to its opinion (at 972–973) where it concluded

Under these circumstances, the majority believes a further remand would be unnecessary and a contravention of fundamental justice.

Having so concluded, we need not discuss additional cases cited by the plaintiff which likewise support the conclusion here reached.

Accordingly, the plaintiff's motion for summary judgment will be granted and defendant's motion for summary judgment will be denied.